UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KAREN HILL AND DAVID HILL,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>Defendants. | Case No. C08-5202 BHS/KLS<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR**:<br>**February 20, 2009** |

Before the Court is Defendants' motion for summary judgment. Dkt. # 5. Defendants originally filed this motion as a motion to dismiss arguing, *inter alia*, that Plaintiffs have no constitutional right to participate in the DOC's extended family visitation (EFV) program. *Id*. The undersigned submitted a Report and Recommendation (Dkt. # 17), recommending that Defendants' motion to dismiss be granted. Plaintiffs objected, submitting documentary evidence in support. Dkts. # 14, 15. In accordance with Fed.R.Civ.P. 12(d), Defendants' motion to dismiss was converted to a motion for summary judgment and re-referred to the undersigned. Dkt. # 18.

The motion was renoted and the parties were given additional time to file briefs on the issues presented on summary judgment. Dkt. # 28. Defendants filed their reply (Dkt. # 20), Plaintiffs filed an affidavit (Dkt. # 24), surreply (Dkt. # 25), and opposition with cross motion (Dkt. # 40), and Defendants filed a reply to Plaintiffs' cross motion (Dkt. # 41). The Court has

REPORT AND RECOMMENDATION - 1

considered all responses, replies, affidavits and exhibits filed by the parties, including those submitted prior to conversion of the motion to dismiss to one for summary judgment.

## I. SUMMARY OF CASE

Pursuant to revised DOC Policy 590.100, David and Karen Hill were denied participation in the EFV Program because they were married after David Hill was convicted. Defendants move to dismiss all of Plaintiffs' claims, arguing that they do not have a constitutional right to EFVs and DOC Policy 590.100 is supported by a legitimate penological interest. The Hills do not dispute that they were married forty days after Mr. Hill was convicted. However, they allege that denial of their EFV application under DOC Policy 590.100 based on the date of their marriage violates their right to equal protection. In support, the Hills argue that at least four other offenders have been given special exceptions to the pre-conviction marriage eligibility requirement of the EFV policy.

Defendants also argue that Plaintiffs have failed to allege Defendants' personal participation, that the Eleventh Amendment shields the named Defendants in their official capacities, and that the Defendants are entitled to qualified immunity.

Having reviewed the parties' papers, supporting documents, and balance of the record, the Court finds that Defendants' motion should be granted on the ground that Plaintiffs have failed to show a violation of a constitutional right.

## II. FACTUAL AND PROCEDURAL BACKGROUND

**A.      Application for Participation in EFV**

The Hills were married on June 20, 2005 in the Snohomish County Jail, forty days after Mr. Hill's conviction. Dkt. # 1-2, pp. 35, 44.[1] After Plaintiff David Hill was committed to the DOC, Plaintiff Karen Hill submitted an application for participation in the Extended Family Visitation program (EFV). Their application was denied on May 8, 2007, pursuant to DOC Policy 590.100 because they were married after his conviction. *Id.*, pp. 37-38; p. 59 (EFV Action form

---

[1]CM/ECF page numbering.

REPORT AND RECOMMENDATION - 2

1 | dated May 8, 2007).[2]

**B.    DOC 590.100 Extended Family Visitation**

DOC 590.100 was preceded by DOC Directive 590.100. On February 13, 1995, the directive was revised. The following summary regarding that revision is informative:

> In February 13, 1995, DOP 590.100 was revised. The impetus for the new and more stringent revised directive was a serious incident at another correctional facility during an extended family visit. The incident occurred at the Clallam Bay Corrections Center during a family visit on January 7, 1995. The inmate involved held his spouse at knife point during an extended family visit, attacked and stabbed her, and held her hostage. The inmate was shot during the incident.
>
> As a result of the Clallam Bay incident, members of the Washington Legislature during the 1995 session introduced a measure that would have completely precluded extended family visitation in Washington prisons. However, instead of passing such a law, the Washington Legislature passed, and the Governor signed, House Bill 2010, containing a provision that required the Department of Corrections to develop a uniform policy governing "the privilege of extended family visitation." *See* RCW 72.09.490.
>
> As a result of House Bill 2010, the Division of Prisons revised the directive governing extended family visits, DOP 590.100. The revised directive became effective February 13, 1995. As revised, DOP Directive 590.100 provides that extended family visits for eligible offenders and their immediate families must be approved by the Superintendent, who has the authority to approve, deny, suspend, or terminate visits.

*Daniel v. Rolfs*, 29 F.Supp.2d 1184, 1186 (E.D. Wash. 1999).

Thus, DOC Policy 590.100 provides that extended family visits for eligible offenders and their immediate families must be approved by the Superintendent, who has the authority to approve, deny, suspend, or terminate visits. *Daniel*, 29 F.Supp.2d at 1186 (*citing* Policy 590.100). The directive provides that only those spouses who were legally married to the offenders prior to conviction for the current crime of conviction are eligible for extended family visitation. *Id*.

---

[2] *See e.g.,* Dkt. # 8, pp. 14-29, copy of DOC 590.100, for full text. DOC Policy 590.100 became effective March 15, 2001, superseding DOP 590.100. The policy was revised on June 8, 2006 and again on July 11, 2007. According to the Summary of Revision/Review dated June 8, 2007, changes made to the policy effective July 11, 2007 did not include changes to ¶ V.C.1's requirement that spouses must have been legally married to the offender prior to conviction and any concurrently or consecutively served conviction. *Id*., p. 14.

REPORT AND RECOMMENDATION - 3

# III. STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether summary judgment should be granted, the court must view the record in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id*.

The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477 U.S. at 290); see also *California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

REPORT AND RECOMMENDATION - 4

## IV. DISCUSSION

**A.     Plaintiffs' Section 1983 Claim**

The Hills filed this claim under 42 U.S.C. § 1983. To sustain a claim under Section 1983, a plaintiff must show that a defendant acted under color of state law to deprive the plaintiff of a right or privilege specifically enumerated under the United States Constitution or the laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 532 (1981), overruled in part on other grounds; *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Prisoners, as all individuals, are afforded the protections of the Civil Rights Act. *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir. 1986). However, "[t]he duty to protect inmates' constitutional rights . . . does not confer the power to manage prisons, for which courts are ill-equipped, or the capacity to second-guess prison administrators. *Id*. at 1086.

The Hills allege that Defendants have deprived them of their right to equal protection. *See, e.g.*, Dkt. # 25, p. 5. In particular, Karen Hill argues that she has a constitutionally protected right to enjoy the same exceptions given to other prisoner wives to the EFV program. *Id*., p. 4.

The Fourteenth Amendment right to equal protection survives incarceration. *See. E.G. Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841 (9th Cir. 1985). Where a plaintiff does not allege a violation of a fundamental right or the existence of a suspect classification, prison officials need only show that their policies bear a rational relation to a legitimate penological interest in order to satisfy the equal protection clause. *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Coakley v. Murphy*, 884 F.2d 1218, 12221-22 (9th Cir. 1989); *Daniel v. Rolfs*, 29 F.Supp.2d 1184 (E.D. Wash. 1998).

The proper inquiry here is whether the limitation on participation in the EFV program to only those spouses who were legally married to the offenders prior to conviction reasonably furthers a legitimate penological interest. *See Daniel, supra.* To prevail on an equal protection claim, Plaintiffs must show (1) that they have a fundamental personal right or (2) that they were intentionally discriminated against as a member of a suspect impermissible classification or (3) that the prison regulation was not reasonably related to a valid penological interest. *Lockary v.*

REPORT AND RECOMMENDATION - 5

*Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990); *see Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

**(1) Fundamental Right**

There is no fundamental personal right implicated in this case as inmates have no constitutionally protected right to conjugal visits. *Toussaint v. McCarthy*, 801 F.2d 1080, 11134 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987)(prisoners have no right to contact visits). That there is a rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant discussion. *Block v. Rutherford*, 468 U.S. 576, 586 (1984).

Neither prisons nor visitors have a constitutional right to prison visitation. *Harris v. Murray*, 758 F.Supp. 1114, 1116 (E.D.Va. 1991). "The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence.' . . . Nor is access to a particular visitor independently protected by the Due Process Clause." *Navain v. Iowa Dep't of Corrections*, 843 F.Supp. 500, 504 (N.D. Iowa 1994) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)), and citing *Kentucky Dep't of Correctons v. Thompson*, 490 U.S. 454, 461 (1989)).

**(2) Discrimination - Protected Class**

In order to state an equal protection claim under 42 U.S.C. § 1983, Plaintiffs have to show that Defendants acted with intent to discriminate. *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991). The discrimination must be "intentional or purposeful." *Grader v. Lynnwood*, 53 Wn.App. 43`1, 437, 767 F.2d 952 (1989), *review denied*, 113 Wn.2d 1001, *Cert. Denied*, 493 U.S. 894, *Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir. 1963). "This 'discriminatory purpose' must be clearly shown since such a purpose cannot be presumed. *Grader*, 53 Wn.App. At 437.

Additionally, Plaintiffs must show that they were "treated differently . . . because [they] belonged to a protected class." *Seltzer-Bey v. Delo*, 66 F.3d 961, 963 (8th Cir. 1995) (citing *Divers v. Department of Corrections*, 921 F.2d 191, 193 (8th Cir. 1990)). "Indeed, showing that different persons are treated differently is not enough without more, to show a denial of equal protection." *Griffin v. County of School Board of Prince Edward Co.*, 377 U.S. 218, 230 (1964).

REPORT AND RECOMMENDATION - 6

Karen Hill insists that theirs is not an ordinary "Extended Family Visit" case, but is a case of first impression because the *Daniel* court never addressed the equal protection rights of a spouse who was denied EFVs. Dkt. # 25, p. 7. Mrs. Hill argues that, as a prisoner's spouse, she has an absolute right to treatment equal to other prisoners' wives with whom she is similarly situated. *Id*.

Whether the claim is pressed by the inmate, his spouse, or the two together, the Court's analysis remains the same. Neither Mr. nor Mrs. Hill have alleged that they are members of a suspect class. Thus, there is no legal basis for Mrs. Hill's claim that she is absolutely entitled to equal treatment. Prisoners are not a suspect class. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998). Nor do the spouses of prisoners have rights to visitation distinct from those of their inmate spouse. *See e.g., Harris v. Murray*, 758 F.Supp. 114, 116 (E.D. Va. 1991) (neither prisoners nor visitors have a constitutional right to prison visitation); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)("a [prisoner] has no constitutional right to physical contact with his family."); *Block v. Rutherford*, 468 U.S. 576, 586 (1984)("That there is a rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant discussion.") In *Robinson v. Palmer*, 841 F.2d 1151 (D.C. Cir. 1988), then Circuit Judge Bader-Ginsburg wrote:

> We hold that, under governing Supreme Court precedent, Mrs. Robinson had no constitutionally-shielded liberty interest in the restoration of her visiting privileges. We therefore reverse all district court rulings tied to the conclusion that she possessed such an interest. We further hold, in accord with the district court, that the Robinsons' first amendment/right [sic] to sustain a marriage relationship claim must be rejected.

*Id*.

### (3) Valid Penological Reason

As in *Daniel*, this Court must accord wide-ranging deference to prison administrators "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Daniel*, 29 F.Supp.2d 1188 (*citing Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Likewise, prison officials must have the ability

REPORT AND RECOMMENDATION - 7

to anticipate security problems and adopt innovative policies as means of addressing such problems and the courts must not become unnecessarily involved in the affairs of prison administrations. *Id.; Procunier v. Martinez*, 416 U.S. 396, 405 (1974). Decisions regarding prison security are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier*, 417 U.S. 817, 827 (1974). With these principles in mind, the Court turns to the final prong of the equal protection analysis.

Plaintiffs question the reasoning of DOC 590.100's eligibility provision requiring inmates to be married prior to conviction. Dkt. # 40, p. 10. They argue that while DOC 590.100 lists criminal history, infractions and domestic violence as criteria, it fails to list the date of marriage. Thus, they reason that the date of marriage cannot be considered a legitimate penological reason for the policy. *Id*. Policy 590.100 and case law reflect otherwise.

DOC 590.100 specifically requires spouses to meet the additional qualifying requirement of having been legally married to the offender prior to conviction and any concurrently or consecutively served conviction. DOC 590.100, ¶V.C.1. Moreover, it has been determined that DOC 590.100's eligibility provision requiring inmates to be married prior to incarceration for the current crime of conviction, "does not violate the Fourteenth Amendment's right to equal protection." *Daniel*, 29 F.Supp.2d at 1189. The *Daniel* Court held that restricting EFVs to inmates married prior to incarceration bears a rational relationship to a legitimate penological interest, stating:

> Pursuant to revised DOP 590.100, only those spouses who were legally married to the offenders prior to incarceration for the current crime of conviction are eligible for extended family visitation. The stated purpose of DOP 590.100 is to "provide eligible inmates the opportunity to maintain relationships with authorized family members; to maintain marriages which existed prior to incarceration in DOC; and to provide an incentive for inmates to maintain a positive behavior and attitude while incarcerated."
>
> EFVs, which usually occur in a mobile home-type facility adjacent to the prison grounds, necessarily present increased safety concerns. Prisoners are allowed to meet privately with their spouses and/or families in a setting that is less structured

REPORT AND RECOMMENDATION - 8

> than that of a prison visiting room. Thus, because of the nature of the program, prison officials must retain discretion in selecting which prisoners will participate in the program and which prisoner will not. Restrictions on participation in the program are aimed at maintaining the safety and orderly operation the prison facilities and in protecting the safety of prison inmates, staff, and visitors.
>
> [W]ith respect to those inmates married after incarceration, there is no existing family relation for the prison to attempt to preserve. Thus, given the safety risks inherent in the EFV program and the deference afforded prison officials in their decision concerning safety risks, the director's decision in this case to limit EFV participation to those inmates married prior to incarceration is rational. Further, Ms. Walter states that most of the marriages which occur after incarceration follow a "pen-pal" courtship. Thus, the spouse is not familiar with the inmates's behavior and may not be aware of the inmate's full criminal history. Accordingly, Ms. Walter concludes the potential for violence against the unknowing spouse is a safety risk - a risk she is not willing to assume.

*Id*. at 1188-89 (internal citations omitted).

There is no dispute that Plaintiffs were married after Mr. Hill's conviction. Dkt. # 1-3, pp. 35, 44. Although the Hills assert that they were in a "loving, engaged, relationship for five years" prior to Mr. Hill's incarceration (Dkt. # 1-3, p. 35), the Court concludes that Defendants have provided a sufficient rationale and legitimate penological purpose for imposing the marriage date requirement. *See Daniel*, 29 F.Supp. 2d at 1189 (internal citations omitted):

> A prison institution has a legitimate penological interest in ensuring the safety of prison inmates, staff and visitors. As Defendants have proffered legitimate penological interests which are furthered by differentiating between inmates married after incarceration and inmates married prior to incarceration, such differentiation is not constitutionally infirm.

This Court finds no reason to disagree with this conclusion.

The Hills argue, however, that Defendants have made numerous exceptions to the "marriage before incarceration" requirement thus proving that Defendants have no legitimate penological interest in insisting that inmates be married before their incarceration dates. They point to four other inmates: Jesse Albritton, Aaron Simpson, Clyde McKnight and Jeffrey Pennick, as examples of inmates who were married after their convictions, yet have been approved for EFVs. Dkt. # 24; Dkt. # 25, pp. 14, 18-20. A review of the record demonstrates that these inmates are not similarly situated to the Hills.

Jesse Albritton's EFV application was approved based on an earlier approval made in error

REPORT AND RECOMMENDATION - 9

1  at an institution where Mr. Albritton was previously incarcerated when prison officials mistakenly
based their decision on the date of his sentence rather than the date of his conviction. *See* Dkt. #
24-2, pp. 2-3 ("Apparently, prior approval at WSR & SCCC was based on I/M Albritton's date of
sentence, 05/25/01, not his date of conviction, contrary to DOC Policy." ). *Id.*, p. 3

Aaron Simpson's EFV privileges, which were previously terminated for an unstated reason, were reinstated by the Assistant Secretary of Prisons based on a history successful visits. Dkt. # 25, p. 14. The Secretary noted that the earlier approval given to the Simpsons to participate in visits and extended family visiting at other facilities had been made in error on the part of DOC. Dkt. # 25, p. 14.

The McKnights' application to participate in EFVs was denied, based on the policy that "offenders must have been married prior to the date of conviction in order to be eligible to participate in the program." Dkt. # 25, p. 16. The McKnights, like the Hills, were denied participation based on the date of their marriage.

The Pennicks's application reflects that they were married four days prior to Mr. Pennick's sentencing and were approved for EFV's following Mr. Pennick's psychological evaluation. *Id.*, p. 20.

Viewing the evidence in the light most favorable to the Hills, the Court concludes that it does not rise to a claim of systematic and invidious discrimination. While the equal protection clause requires that laws must be evenhanded as actually applied, a mere demonstration of inequality is not enough. *McQueary*, 924 F.2d at 835. The Constitution does not require identical treatment. *Id*. "There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a 'settled rule that the Fourteenth Amendment guarantees equal laws, not equal results'." *Id*. citing *Personnel Adm'r v. Feeney*, 442 U.S. 256, 273 (1979).[3]

---

[3]*See also*, *Polakoff v. Henderson*, 370 F.Supp. 690, 694-95 (N.D. Ga. 1973), *aff'd,* 488 F.2d 977 (5th Cir. 1974) (uniform policies are not required at each and every penitentiary within the federal prison system); *Cooper v. Elrod*, 622 F.Supp. 373 (N.D. Ill. 1985) (Equal Protection Clause does not require conditions, practices and rules at county and state correctional facilities to be identical).

REPORT AND RECOMMENDATION - 10

Accordingly, the undersigned recommends that Plaintiffs' claim that they were denied equal protection based on their participation in a non-suspect class should be denied.

**B.     Failure to Allege Personal Participation**

To make out a cause of action under section 1983, a plaintiff must plead that the defendants were acting under color of state law and deprived plaintiff of constitutional or federal rights. *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Further, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is the 'moving force of the constitutional violation.'" *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989) (quoting *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987)). "The requisite causal connection can be established ... by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Redman v. County of San Diego,* 942 F.2d 1435, 1448 (9th Cir.1991) (en banc) (quoting *Johnson v. Duffy,* 588 F.2d 740, 743-44 (9th Cir.1991).

Defendants argue that they should be dismissed from this action because they have been named as defendants in their supervisory positions alone. Dkt. # 5, pp. 6-7. They argue that the only allegation specifying even remote involvement for any of them is that Associate Superintendent Roberts followed the Correctional Program Manager's recommendation to deny EFV's. *Id. citing* Dkt. # 1-3, p. 37.

Plaintiffs allege that Defendants Vail and Pacholke are proper parties because they have been employees of the DOC for years, took oaths to uphold the constitutions of the United States and Washington state, and had numerous opportunities to rectify the constitutional wrong. Dkt. #25, pp. 8-9. Plaintiffs allege that Defendant Roberts was an active participant in violating their constitutional rights to equal protection. *Id.*, p. 9. On May 31, 2007, Defendant Roberts disapproved Plaintiff's EFV application, noting "does not meet policy requirements." Dkt. # 1-3, p.

REPORT AND RECOMMENDATION - 11

65-66.

A section 1983 suit cannot be based on vicarious liability alone, but must allege that the defendant's own conduct violated the plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989). Therefore, Defendants Vail and Pacholke are entitled to summary judgment on the additional ground of lack of personal participation.

The evidence relating to Defendant Roberts reflects that she was personally involved in denying Mr. Hill's application. Dkt. # 1-3, p. 65-66. However, as noted above, the Court finds that she is entitled to summary judgment on the ground that Plaintiffs have failed to show the violation of a constitutional right.

**C.    Qualified Immunity**

Defendants also urge that they are entitled to qualified immunity because Plaintiffs have not alleged violation of a clearly established constitutional right and the pre-conviction eligibility requirement in DOC Policy 590.100 was expressly upheld in *Daniel v. Rolfs, supra.*

As the undersigned has found that the Hills have not alleged a violation of a constitutional right, the Court need not reach this issue.

**D.    Eleventh Amendment Immunity**

Defendants also urge that the Eleventh Amendment bars suit against the DOC because neither a State nor its officials acting in their official capacities are "persons" under § 1983. The Hills argue that the DOC waived any claim to Eleventh Amendment immunity because the Defendants removed this case from state court. Dkt. # 40, p. 18.

The Eleventh Amendment reads in relevant part:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend XI. Under the Eleventh Amendment, therefore, a state is not subject to suit by its own citizens in federal court. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

Under the Eleventh Amendment to the United States Constitution, a state is not subject to

REPORT AND RECOMMENDATION - 12

suit by its own citizens in federal court. *Edelman*, 415 U.S. at 662-63.   A state agency, as an arm of the state, is immune from suit in federal court under the Eleventh Amendment as well. *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).  An entity that has Eleventh Amendment immunity also is not a "person" within the meaning of 42 U.S.C. § 1983.[4] *Howlett*, 496 U.S. at 365.

A lawsuit brought "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will,* 491 U.S. at 71.  As such, "it is no different from a suit against the State itself." *Id.*  Accordingly, neither a state nor its officials acting in their official capacities are "persons" for the purposes of 42 U.S.C. § 1983. *Will*, 491 U.S. at 71.  The only exception to this general rule is when a state official is sued in his official capacity for prospective injunctive relief. *Doe v. Lawrence Livermore National Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997).

Plaintiffs' reliance on *In re Lazar*, 237 F.3d 967 (9th Cir. 2001) is inapposite.  That case stands for the very narrow proposition that when a state or an "arm of the state" files a proof of claim in a bankruptcy proceeding it waives its Eleventh Amendment immunity with regard to the bankruptcy estate's claims that arise from the same transaction or occurrence as the state's claim. *Id.*, p. 978.   Moreover, as noted by Defendants, removal of a case to federal court does not waive immunity. *See e.g. Will*, 491 U.S. 58, 109 S.Ct. 2304, 2308, which was originally filed in state court and removed to federal court.

Accordingly, the Hills claims against the DOC and as to the Hills claims for damages against Defendants in their official capacities must be dismissed.

---

[4]Section 1983 reads in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

REPORT AND RECOMMENDATION - 13

# V. CONCLUSION

For the foregoing reasons, the Court recommends that the Defendants' motion for summary judgment (Dkt. # 5) be **GRANTED** and that Plaintiffs' cross motion for summary judgment (Dkt. # 40) be **DENIED**. A proposed order accompanies this Report and Recommendation. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **February 20, 2009**, as noted in the caption.

DATED this  30th  day of January, 2009.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14