1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF WASHINGTON
9                          AT TACOMA

10  KAREN HILL and DAVID HILL,

11                  Plaintiffs,              CASE NO. C08-5202BHS

12       v.

13  WASHINGTON STATE DEPARTMENT            ORDER ADOPTING REPORT
    OF CORRECTIONS; et al.,                AND RECOMMENDATION
14                                         IN PART AND RESERVING
                    Defendants.            RULING ON PLAINTIFFS'
15                                         CLAIM FOR INJUNCTIVE
                                           RELIEF
16

17       This matter comes before the Court on the Report and Recommendation of the

18  Honorable Karen L. Strombom, United States Magistrate Judge (Dkt. 43), Plaintiffs'

19  Objections to the Report and Recommendation (Dkt. 44) and the remainder of the record.

20  The Court hereby adopts the Report and Recommendation in part as stated herein, and

21  requests additional briefing.

22              **I. FACTUAL AND PROCEDURAL BACKGROUND**

23       Plaintiffs challenge the Washington State Department of Corrections ("DOC")

24  policy which permits eligible inmates extended family visitation. The governing policy in

25  place at the time of Plaintiffs' complaint was DOC Policy 590.100, Revision Date July

26  11, 2007. Dkt. 1-2, 41-55 (DOC Policy 590.100, Revision Date 7/11/07) (hereafter "pre-

27  revision DOC Policy"). This policy was revised after Judge Strombom filed a Report and

28

Recommendation. *See* DOC Policy Number 590.100, Revision Date 2/27/09, *available at* http://www.doc.wa.gov/Policies/showFile.aspx?name=590100 (hereafter "current DOC Policy").

## A.    EXTENDED FAMILY VISITS PRIOR TO FEBRUARY 27, 2009

Under the pre-revision DOC Policy, a prisoner could qualify for an Extended Family Visit ("EFV") under certain conditions. The history of DOC 590.100 is explained as follows:

In February 13, 1995, [DOC] 590.100 was revised. The impetus for the new and more stringent revised directive was a serious incident at another correctional facility during an extended family visit. The incident occurred at the Clallam Bay Corrections Center during a family visit on January 7, 1995. The inmate involved held his spouse at knife point during an extended family visit, attacked and stabbed her, and held her hostage. The inmate was shot during the incident.

As a result of the Clallam Bay incident, members of the Washington Legislature during the 1995 session introduced a measure that would have completely precluded extended family visitation in Washington prisons. However, instead of passing such a law, the Washington Legislature passed, and the Governor signed, House Bill 2010, containing a provision that required the Department of Corrections to develop a uniform policy governing "the privilege of extended family visitation." *See* RCW 72.09.490.

As a result of House Bill 2010, the Division of Prisons revised the directive governing extended family visits, [DOC] 590.100. The revised directive became effective February 13, 1995. As revised, [DOC] Directive 590.100 provides that extended family visits for eligible offenders and their immediate families must be approved by the Superintendent, who has the authority to approve, deny, suspend, or terminate visits. [DOC] 590.100 ("If it is determined there is a reason to believe that an offender, although he/she meets all other eligibility requirements, is a danger to him/herself, the visitor(s), or to the orderly operation of the program, the Superintendent may exclude the offender from the program.").

The directive further eliminates "maximum, close custody, and death row offenders" from participating in the program, and restricts extended family visits in a number of other categories. The directive includes a restriction that "[o]ffenders may be excluded from participation if they have a documented history of domestic violence against any person." Additionally, the directive provides that only those spouses who were legally married to the offenders prior to incarceration for the current crime of conviction are eligible for extended family visitation. Id.

On February 24, 1995, Tom Rolfs, Director of the Division of Prisons, issued and circulated the new EFV directive as well as a policy statement governing the implementation of the new EFV directive. In the

policy statement, Rolfs expressly recognized the extensiveness of the directive's significant revisions and encouraged the superintendents to take the necessary steps to ensure that the revised directive be implemented "with the sensitivity and necessity of its contents in mind." The policy statement provided two guidelines for implementing the newly revised directive.

The first guideline requires the Prison Superintendents to review each inmate currently approved for participation in the EFV program pursuant to the pre-revision directive to determine if he/she meets the new criteria. It also allows the Superintendent to disapprove any inmate currently participating who failed to meet the revised directive's provisions.

The second guideline allows the Superintendents to make one-time exceptions for inmates who do not meet the revised directive's requirements. Specifically, this "grandfathering" provision provides the Superintendents with the discretion to approve inmates who had (1) either already been participating in the program, or had made application to the program prior to January 10, 1995, and (2) were determined not to present safety or security concerns for the program or participants. The "grandfathering" clause does not grant the superintendents discretion to consider any other inmate for participation in the program.

*Daniel v. Rolfs*, 29 F. Supp. 2d 1184, 1185-86 (E.D. Wash. 1998). When the *Daniel* court addressed the constitutionality of this policy, the criteria of the grandfathering provision were that the inmate *either* had made application to the program or had already been participating in the program before January 10, 1995.

The pre-revision DOC Policy, which was in effect at the time of Plaintiff's complaint, contained the following "grandfathering provision":

Offenders who made application *and* were participating in the EFV Program prior to January 10, 1995, may be allowed to continue participation based on the Superintendent's review. Offenders who were grandfathered into the program and lose custody, must reapply and meet current application criteria. This also applies to parole revocations, CCI violators and re-incarcerated offenders. Grandfathering is not allowed for remarriages following a divorce unless authorized by the Prisons Deputy Secretary.

Pre-revision DOC Policy 590.100, Directive § V(E)(1) (emphasis added). The pre-revision provision specifically precluded extended visitation privileges to spouses who married inmates post-conviction. *Id*., § V(C)(1).

**B.     CURRENT DOC POLICY**

On February 27, 2009, DOC issued the current DOC Policy. The current DOC Policy made several changes to the pre-revision DOC Policy. In particular, the current DOC policy permits an eligible inmate, *see* DOC Policy 590.100 § (V)(A), extended family visitation with a spouse whom the inmate married after formal judgment and sentence if certain conditions are met, *see id.* § (V)(C)(2) and (3).

In addition, the current DOC Policy grandfathering provision provides:

> Offenders who made application or were participating in the EFV Program prior to January 10, 1995, may be allowed to continue participation based on Superintendent review. Offenders who were grandfathered into the program and demoted in custody must reapply and meet current application criteria.

*Id.*, § (V)(G)(1).

**C.     PLAINTIFFS' REQUEST FOR EFV**

Plaintiffs are a married couple, Karen Hill a free person, and David Hill an inmate incarcerated in the Washington Department of Corrections ("DOC"). Plaintiffs were married on June 20, 2005, which was 40 days after Mr. Hill's conviction. Dkt. 1-2 at 29 (Plaintiffs' complaint). Plaintiffs were denied participation in the EFV program because they were married after Mr. Hill was convicted.

**D.     THE CURRENT PROCEEDINGS**

On February 22, 2008, Plaintiffs filed a civil rights complaint in the Superior Court of the State of Washington in and for the County of Thurston. Dkt. 1-2, 28-35. Plaintiffs claim that Defendants' denial of their EFV application is a violation of their right to equal protection of the law under the Fourteenth Amendment. *Id.* at 12-13. On April 2, 2008, Defendants removed the action to this Court. Dkt. 1. Plaintiffs seek damages as well as injunctive relief.

On April 9, 2008, Defendants filed a Motion to Dismiss, arguing that Plaintiffs have no constitutional right to participate in the EFV program under DOC Policy 590.100. Dkt. 5. This motion was later renoted as a motion for summary judgment.

Defendants maintain that Plaintiffs fail to state an equal protection violation. *Id*. Defendants further maintain that (1) Plaintiffs fail to allege personal participation on the part of Defendants, (2) Plaintiffs' claims against the DOC are barred by the Eleventh Amendment, and (3) even if a constitutional violation occurred, the individual Defendants are entitled to qualified immunity.

On January 30, 2009, Judge Strombom issued a Report and Recommendation. Dkt. 43. Judge Strombom recommended that the Court grant Defendants' motion because (1) the "grandfathering provision" did not violate Plaintiffs' right to equal protection, (2) Plaintiffs were not eligible for the "grandfathering provision," and (3) Defendants Vail and Pacholke were entitled to summary judgment for lack of personal participation. Judge Strombom did not reach the issue of qualified immunity with regard to Defendant Roberts, who was involved in the denial of Mr. Hill's application, because she concluded that Plaintiffs failed to allege a constitutional violation. Judge Strombom did conclude that Plaintiffs' suit against DOC was barred under the Eleventh Amendment.

On February 13, 2009, Plaintiffs filed objections to the Report and Recommendation. Dkt. 44. Plaintiffs specifically object to Judge Strombom's recommendation that Defendants did not violated Plaintiffs' rights to equal protection and argue that Defendants have not put forth a legitimate penological interest for either DOC Policy 590.100 or the "grandfathering provision" of the policy. Plaintiffs also maintain that changes in DOC Policy 590.100, recently revised on February 27, 2009, support their argument that the policy Plaintiffs initially challenged was arbitrary.

Plaintiffs raise three additional objections. First, Plaintiffs maintain that Defendants Vail and Pacholke should be held liable because they are public servants and failed to amend the DOC Policy. Second, Plaintiffs contend that no individual Defendant is entitled to qualified immunity because a reasonable person would know that enforcing the DOC Policy violates a clearly established constitutional right. Third, Plaintiffs maintain that DOC is a proper defendant.

On February 27, 2009, Defendants responded. Dkt. 45. On March 10, 2009, Plaintiffs filed a reply, requesting that the Court reject the Report and Recommendation because Defendants fail to explain why Plaintiffs are treated differently than inmates who applied or participated in the EFV program prior to the cut-off date. Dkt. 46.

## II. DISCUSSION

### A. STANDARD

The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The district court "may also receive further evidence" on the issues presented. *Id.*

### B. INDIVIDUAL DEFENDANTS

The Court adopts Judge Strombom's finding that Defendants Vail and Pacholke are entitled to summary judgment for lack of personal participation regarding Plaintiffs' challenge to the pre-revision DOC Policy. Plaintiffs' argument that Defendants Vail and Pacholke should be held liable because they are public servants and failed to amend the pre-revision DOC Policy is unavailing. Judge Strombom properly addressed this argument in the Report and Recommendation. In addition, even if Defendants had alleged personal participation, Defendants Vail and Pacholke are entitled to qualified immunity as discussed below.

Judge Strombom did not reach the issue of qualified immunity because she found that Plaintiffs failed to allege a constitutional violation. Thus, addressing qualified immunity was not necessary. This Court will address qualified immunity because Plaintiffs challenged this issue in their objections.

Prior to the Supreme Court's decision in *Pearson v. Callahan*, 555 U.S. ___ , 129 S.Ct. 808, 172 L. Ed. 2d 565 (2009), courts were required to first determine whether the plaintiff had alleged facts that demonstrated the violation of a constitutional right, prior to addressing the issue of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Under *Saucier*, if the court found a violation of a constitutional right, "the next, sequential step [was] to ask whether the right was clearly established . . . in light of the specific context of the case." *Id.* This sequence, however, is no longer the mandatory procedure that a district court must utilize when considering the shield of qualified immunity. *See Pearson*, 129 S. Ct. at 818. Rather, the district court may "determine the order of decisionmaking that will best facilitate the fair and efficient dispositon of each case." *Id.* at 821. Because Plaintiffs here have not demonstrated that Defendants violated any clearly established constitutional right, the Court may resolve Plaintiffs' claims without addressing the issue of whether a constitutional violation was properly alleged.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In light of pre-existing law, the unlawfulness of a state actor's conduct must be apparent in order for that conduct to constitute a violation of "clearly established law." *See Anderson v. Creighton*, 435 U.S. 635 (1987). The plaintiff bears the burden of proving the "fact-specific" right was clearly established at the time of the alleged violation so that a reasonable official would have understood that his or her conduct violated that right. *Id.* at 638.

The Court concludes that Defendants Vail, Pacholke, and Roberts are entitled to qualified immunity with regard to all of Plaintiffs' claims for damages, fees, and costs for Defendants' enforcement of both the pre-revised DOC Policy and the current DOC Policy. Although Plaintiffs argue that a reasonable person would know that enforcing the DOC Policy violates a clearly established constitutional right, they fail to show that the DOC Policy, in light of pre-existing law, violates any right guaranteed by the

Constitution. In other words, even if Plaintiffs had alleged a violation of a constitutional right, the DOC Policy did not violate any clearly established constitutional right.[1]

## C.    ELEVENTH AMENDMENT IMMUNITY

The Court also adopts Judge Strombom's finding that the Eleventh Amendment bars Plaintiffs' suit against the DOC. Dkt. 42, 12-13. Judge Strombom properly rejected Defendants' argument that *In re Lazar*, 237 F.3d 967 (9th Cir. 2001), supports their assertion that the DOC waived immunity by removing Plaintiffs' action to federal court. *Id.* at 13.

The Court notes that Plaintiffs also sought injunctive relief. Dkt. 1-2 at 34. Under the doctrine of *Ex Parte Young*, 209 U.S. 267, 289 (1908), prospective relief against a state official in his or her official capacity to prevent future federal constitutional or federal statutory violations is not barred by the Eleventh Amendment. This doctrine appears to apply to this case. Judge Strombom implicitly (and properly) dismissed Plaintiffs' claim for injunctive relief because she found that the pre-revised DOC Policy did not violate Plaintiffs' constitutional rights.

As discussed above, the DOC revised the challenged policy after Judge Strombom issued the Report and Recommendation. Therefore, the Court should not determine whether Plaintiffs have pled a cognizable claim for injunctive relief based on the current DOC Policy until Plaintiffs have had an opportunity to address this issue.

The only proper defendant to this claim is Defendant Vail in his capacity as Secretary of the DOC. *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (claim for prospective relief against a state agency barred by Eleventh Amendment); and *Greenwalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) (to allege claim for injunctive relief against state agency, a plaintiff must name the state official responsible for enforcing the contested policy in his or her official capacity).

---

[1] In any event, this Court previously found that the pre-revision DOC Policy did not violate any constitutional right. *Lowden v. Miller-Stout*, C08-5365BHS, Dkt. 63.

**D. CONCLUSION**

The Court overrules Plaintiffs' objections to Judge Strombom's Report and Recommendation with regard to all of Plaintiffs' claims challenging the pre-revised DOC Policy.

However, in light of the revision of the challenged DOC Policy, Plaintiffs may file additional briefing on the issue of whether they are entitled to injunctive relief from the current DOC Policy 590.100. Plaintiffs may file briefing no later than May 1, 2009. Defendants may respond to Plaintiffs briefing on or before May 8, 2009. If Plaintiffs fail to file, the Court will address Defendants' Motion for Summary Judgment based on the current status of the record.

The only remaining defendant in this case is Defendant Vail.

### III. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiffs' Objections (Dkt. 44) are **OVERRULED** and the Report and Recommendation (Dkt. 43) is **ADOPTED in part**, as follows:

1.      Plaintiffs' claims for damages based on the pre-revision DOC Policy or current DOC Policy are **DISMISSED**;

2.      Plaintiffs may file additional briefing on the question of whether they are entitled to injunctive relief under the current DOC Policy as stated herein. The Court reserves ruling as to Plaintiffs' claims for injunctive relief.

3.      The Report and Recommendation is **RENOTED** for May 8, 2009.

DATED this 31st day of March, 2009.


_____
BENJAMIN H. SETTLE
United States District Judge